UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20303-CR-ALTONAGA/DAMIAN

UNITED STATES OF AMERICA

vs.

CARL R. RUDERMAN,

    Defendant.
_____/

COURT EXHIBIT
CASE NO. 23-20303-CR-ALTONAGA
EXHIBIT NO. B

## FACTUAL PROFFER

1. The Defendant, CARL R. RUDERMAN (hereinafter referred to as the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

2. From in or around 2013, through in or around at least July 2018, the Defendant served as the chairman of I Global Capital ("1 Global"). 1 Global purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. During the operation of I Global, I Global obtained funds from potential investors (sometimes referred to as "lenders" or "syndicate partners"). Initially, 1 Global offered a 12- month note. Then Global attempted to change its offering to a 9-month note that automatically renewed, or "rolled over."

3. As investors, investment advisors, and regulators questioned whether 1 Global's investment offering was a security, the Defendant, along with lawyers Andrew Dale Ledbetter and Jan Douglas Atlas, devised a strategy to persuade those investors, investment advisors, and regulators that the 1 Global investment was not a security. After receiving advice in early 2016 that the 1 Global offering was in fact a security, the Defendant instructed Jan Douglas Atlas to author an opinion letter

1

dated May 17, 2016, falsely and fraudulently stating that the 1 Global offering was not a security and therefore not subject to federal securities law or SEC registration requirements.

4. In or around August 2016, the Defendant learned about other legal opinions from June 2016 and July 2016 which had concluded that the 1 Global offering was a security and offered instructions on how to comply with federal securities laws. The Defendant instructed Jan Douglas Atlas to author a second opinion letter addressed to the Defendant dated August 25, 2016, falsely and fraudulently stating that the 1 Global offering was not a security. The Defendant and others used Jan Douglas Atlas's August 25, 2016 opinion letter and the conclusion contained within it to falsely and fraudulently represent to investors, including unaccredited investors, and investment advisors advising unaccredited investors, that 1 Global was not offering a security. In doing so, the Defendant intentionally skirted federal securities laws and SEC registration requirements which would have greatly reduced his ability to solicit individual unaccredited investors and to receive additional investor money from individuals.

5. The Defendant and his co-conspirators solicited money from investors by falsely and fraudulently promising significant returns on investment, including that 1 Global would generate double-digit returns on investment. The Defendant and other co-conspirators made false and misleading representations, via mail and interstate wire, to investors and potential investors as to the performance and profitability of 1 Global's business, including claims that 1 Global's past profits had been between 18% and 20%. The Defendant and others working at his instruction also created "portfolio statements" provided to investors, which falsely inflated 1 Global's past returns on investments.

6. To solicit and retain investors, the Defendant and other conspirators misrepresented the status of certain MCAs to make them appear better performing, including by underreporting to

investors the extent to which the MCAs were defaulting on repayments to 1 Global.

7.     In order to further bolster their assurances to investors that 1 Global's business was profitable, the Defendant and his co-conspirators falsely and fraudulently told investors, and potential investors, that 1 Global's financial statements had been audited by at least two certified public accounting firms, when in fact no accounting firm had ever performed an audit of 1 Global's financial statements.

8.     1 Global often raised money from investors that it did not loan out via MCAs. 1 Global referred to the money it raised from investors, but did not loan to merchant borrowers, as "cash not yet deployed" or "not deployed" funds. Over time, the difference between the amount of money 1 Global raised from investors and the amount of money 1 Global actually loaned out via MCAs grew to tens of millions of dollars.   For example, on or about February 5, 2018, the Defendant received a "cash not yet deployed imbalance schedule" from the 1 Global controller showing that the "cash in bank" for 1 Global was $24,749,890 short due to, among other expenses unrelated to 1 Global's business, transfers to Payday Lending Business #1, Cosmetic Dentist Financing Company #1. The Defendant responded in email: "Thank you . . . please see me."

9.     The Defendant misappropriated millions of dollars of existing 1 Global funds, frequently from the "cash not yet deployed," for his benefit and the benefit of his family, without the investors' knowledge or consent. Among other things, the Defendant directed 1 Global investor funds to be used for his credit card payments, vacation travel, insurance payments for an art collection and valuable jewelry, drivers, nannies, housekeepers, mortgage payments for his house, tuition, and payments for a luxury car driven by his wife, often funneling the money through a bank account in the name of Pay Now Direct or describing the payments as an "annuity" from 1 Global. In total, the Defendant received at least $4 million to a trust in his family's name, $200,000 to accounts in the

Defendant's name, and $5.6 million to Pay Now Direct, all funded by investors as a result of the scheme.

10.  The Defendant likewise directed 1 Global investor funds to be diverted to Payday Lending Business #1 (approximately $5.3 million), Cosmetic Dentist Financing Company #1 (approximately $19.6 million), and Cryptocurrency Company #1 (approximately $1 million), for the benefit of the Defendant and a family member. 1 Global investors did not have a documented interest in Payday Lending Business #1, Cosmetic Dentist Financing Company #1, and Cryptocurrency Company #1, did not receive returns on any investment in these businesses, and the diversion of the 1 Global investor money to these businesses was not disclosed on investor statements. 1 Global investors were never informed of and never consented to the Defendant's use of their funds for personal expenses or to Payday Lending Business #1, Cosmetic Dentist Financing Company #1, and Cryptocurrency Company #1. Instead, the Defendant and his co-conspirators falsely and fraudulently told investors that undeployed funds were being held in 1 Global bank accounts, awaiting deployment to future small and medium-sized businesses through the MCAs.

11.  At times, the Defendant and his co-conspirators paid investors using other investors' funds without the investors' knowledge or consent.

[THIS PAGE INTENTIONALLY LEFT BLANK]

12. During the course of the scheme, the Defendant and others raised a total of $285,599,532 from investors as a result of the false and fraudulent statements and the sales of unregistered securities. This scheme caused financial hardship to well over 25 investors.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 10/12/23    By: _____
ELIZABETH YOUNG
AMANDA PERWIN
ASSISTANT U.S. ATTORNEYS

Date: 10/12/23    By: _____
JEFFREY MARCUS, ESQ.
ATTORNEY FOR DEFENDANT

Date: 10/12/23    By: _____
CARL R. RUDERMAN
DEFENDANT